# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JONESTOWN BANK AND TRUST CO.,** : | |
|     Plaintiff : | |
| : | Civil Action No. 1:12-cv-01666 |
| v. : | |
| : | (Chief Judge Kane) |
| **AUTOMATED TELLER MACHINE,** : | |
| **SERVICES, INC.,** : | |
|     Defendant : | |

## MEMORANDUM

Presently pending before the Court is Plaintiff's motion for default judgment. (Doc. No. 6.) As Defendant has yet to appear or defend in this action, no opposition to the motion has been filed. For the reasons that follow, the Court will grant the motion but defer entering judgment pending determination as to the amount of damages to be awarded.

**I.    BACKGROUND**

On August 21, 2012, Plaintiff Jonestown Bank and Trust Company filed this diversity action against Defendant Automated Teller Machine, Services, Inc., raising claims of breach of contract, quantum meruit, and fraud under Pennsylvania law. (Doc. No. 1.) In its complaint, Plaintiff alleges that it entered into a contract with Defendant in 2011 under which Defendant agreed to install nine automated teller machines ("ATMs"), including two refurbished ATMs, as well as the current version of Agilis software on all nine ATMs. (Id. ¶ 4.) Prior to entering into the contract, Plaintiff informed Defendant that the performance of these services was "necessary for [Plaintiff] to be compliant with the Department of Justice (DOJ) directive, requiring financial institutions [to] comply with DOJ regulations promulgated under the Americans with Disabilities Act (ADA) . . . on or before March 15, 2012." (Id. ¶ 5.) Plaintiff paid Defendant $53,568.00 for

the installation of the two refurbished ATMs and the current software licenses for all of the ATMs. (Doc. No. 7 ¶ 15.) Defendant, however, despite representing on multiple occasions that it would perform the installations, has neither installed the two refurbished ATMs nor the current version of the software on any of the other ATMs. (Doc. No. 1 ¶¶ 11, 13; Doc. No. 7 ¶¶ 13-14, 19.) As a result of Defendant's failure to fulfill its contractual obligations, Plaintiff contracted with another vendor, who performed the services at a cost of $69,793.00. (Doc. No. 7 ¶ 11.)

Plaintiff now seeks $69,793.00 in damages, "representing the $53,568.00 paid . . . to [Defendant], plus the difference between the vendor payment ($69,793.00) and monies paid to [Defendant] for services not rendered, $16,225.00," as well as prejudgment interest and attorney's fees and costs. (Doc. No. 6-1 ¶¶ 14, 23-24.) Plaintiff also seeks punitive damages in the amount of $160,704.00 in compensation for its future exposure to ADA claims due to its noncompliance with the DOJ regulations that became effective on March 15, 2012. (Id. ¶ 23.)

The record shows that, although Defendant was properly served with the summons and complaint (Doc. No. 3), Defendant has not appeared, answered, moved, or otherwise responded to the pleading. After Defendant failed to respond to the pleading, Plaintiff requested, and the Clerk of Court entered, default against Defendant pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (Doc. Nos. 4, 5.) Now before the Court is Plaintiff's motion for entry of default judgment under Rule 55(b). (Doc. No. 6.)

## II. DISCUSSION

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for entry of default judgment against a defendant who has not appeared and who is neither a minor nor an incompetent person. Fed. R. Civ. P. 55(b)(2). Entry of default does not entitle a claimant to

default judgment as a matter of right. 10 James Wm. Moore et al., Moore's Federal Practice § 55.31 (Matthew Bender ed. 2010). Even when a party has defaulted and all of the procedural requirements for a default judgment are satisfied, the decision to either render default judgment or refuse to render default judgment rests in the discretion of the district court. Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987). In undertaking this evaluation, the Court must consider: "(1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)). But when a defendant has failed to appear or respond in any fashion to the complaint, this analysis is necessarily one-sided; entry of default judgment is typically appropriate in such circumstances at least until the defendant comes forward with a motion to set aside the default judgment pursuant to Rule 55(c). As the United States Court of Appeals for the Third Circuit has explained:

> In most instances where a party's right to prosecute or defend would be terminated as a sanction, the moving party has the burden of creating a record showing the appropriateness of this ultimate sanction and the district court has the responsibility of making a determination on that issue in light of considerations like those articulated in Poulis. When a defendant fails to appear and perhaps under other circumstances covered by Rule 55, the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred. Even in those situations, however, consideration of Poulis type factors is required if a motion to lift the default is filed under Rule 55(c) or Rule 60(b) and a record is supplied that will permit such consideration.

Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 177 n.9 (3d Cir. 1990).

Here, the factors weigh in favor of granting default judgment. First, there is a risk of prejudice to Plaintiff if default judgment is denied. The allegations contained in the complaint

3

and the affidavit of Troy Peters, Plaintiff's chief executive officer, indicate that Defendant breached its contract with Plaintiff by failing to install the two refurbished ATMs and the current version of the Agilis software on any of the other ATMs at issue, resulting in monetary losses in the amount of $69,793.00. (Doc. No. 6-1 at 1-3; Doc. No. 7 at 7-8.) Moreover, Plaintiff avers that it may be subject to future monetary losses relating to its ATMs' noncompliance with DOJ regulations, which became effective on March 15, 2012, due to Defendant's conduct. (Doc. No. 6-1 at 5-6.) Second, Defendant has not asserted any defense, either by answering the allegations in the complaint or by opposing the instant motion for entry of default judgment. Finally, the Court can find no excuse or reason for Defendant's default other than its own conduct. Plaintiff has shown that Defendant was personally served with all of the required documents. (Doc. No. 3.) Despite this, Defendant has neither engaged in the litigation process nor offered any reason for its failure to appear. Therefore, the Court finds that Defendant is personally culpable for its failure to appear and that there is no basis in the record to excuse this conduct. Accordingly, the Court finds that default judgment is warranted.

Because default judgment will be entered, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990). The allegations in the complaint, taken as true, are sufficient to make out breach-of-contract and fraud claims under Pennsylvania law.[1] Accordingly, the Court must assess the amount of damages to which Plaintiff is entitled. Fed. R.

---

[1] Because the allegations of the complaint sufficiently show a breach-of-contract claim, Plaintiff's quantum meruit claim fails. See Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987) ("Under Pennsylvania law, the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between the parties is founded on a written agreement or express contract.") (citation and internal quotation marks omitted).

4

Civ. P. 55(b)(2)(B). In determining an appropriate award of damages, the Court may conduct a hearing or receive detailed affidavits from Plaintiff. See id.; Durant v. Husband, 28 F.3d 12, 15 (3d Cir. 1994) (stating that, if necessary, the court may hold a hearing to assess damages).

First, with respect to Plaintiff's request for damages stemming from Defendant's breach of contract, Plaintiff presented evidence that: it contracted with Defendant for, inter alia, the installment of two refurbished ATMs and current software; Defendant failed to perform such services; Plaintiff remitted funds to Defendant for these services; and Plaintiff was forced to contract with a third party for the performance of these services. Upon review of this evidence, the Court is satisfied that Plaintiff has sufficiently supported its claim for damages relating to Defendant's breach of contract and is entitled to recover $69,793.00 in damages.

Next, the Court will assess Plaintiff's request for attorney's fees and costs. When assessing a request for attorney's fees, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Performing this calculation will provide the "lodestar" figure, which is presumed to be the reasonable fees for the matter. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). The party seeking the attorney's fees has the burden to prove that the requested attorney's fees are reasonable, which initially requires the fee petitioner to "submit evidence supporting the hours worked and the rates claimed." Id. at 1183; see also E.E.O.C. v. Fed. Express Corp., 537 F. Supp. 2d 700, 721 (M.D. Pa. 2005) (citing Hensley, 461 U.S. at 433). An hourly rate is reasonable if the fee applicant demonstrates by evidence, in addition to the fee applicant's own affidavit, that the suggested rate is comparable to the current "rates prevailing in the community

for similar services by lawyers of reasonably comparable skill, experience, and reputation." Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001). Here, Plaintiff's counsel has submitted an affidavit and fee petition, detailing the tasks performed and the hours worked, but not providing any support for the claimed hourly rate of $155. (Doc. No. 6-2.) Thus, the Court will direct Plaintiff to submit further evidence indicating that the claimed hourly rate, and the fees requested with respect to its claim for punitive damages, is reasonable under Maldonado.

Finally, the Court finds that Plaintiff has not sufficiently supported its request for punitive damages. "By their very definition, punitive damages are intended to punish a defendant; they are not intended to compensate the plaintiff. '[P]unitive damages serve a broader function; they are aimed at deterrence and retribution.'" Cortez v. Trans Union, LLC, 617 F.3d 688, 718 n.37 (3d Cir. 2010) (quoting State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003)). Pennsylvania has adopted Section 908(2) of the Restatement (Second) of Torts, which permits punitive damages for conduct that is "'outrageous because of the defendant's evil motives or his reckless indifference to the rights of others.'" Rizzo v. Haines, 555 A.2d 58, 69 (Pa. 1989) (quoting Restatement (Second) of Torts § 908(2) (1977)). While Plaintiff's allegations that Defendant made multiple fraudulent misrepresentations may support an award of punitive damages, the basis for the request is that Plaintiff remains "significantly exposed to future claims under the ADA for which the Plaintiff cannot specifically set forth the damages for which it might incur. Plaintiff's liability exposure is $56,000.00 for the first offense, plus double that amount for subsequent offenses and monetary damages awarded to person(s) aggrieved."[2]

---

[2] In total, Plaintiff seeks $160,704.00 in punitive damages, representing "the equivalent of two claims for violation of the Department of Justice Final Rule, plus attorney's fees in the amount of $5,704.00." (Doc. No. 7 at 9.) Plaintiff does not specify the basis for this request for

6

(Doc. No. 7 at 8.) Based on the evidence produced by Plaintiff, the Court finds that Plaintiff's entitlement to damages on this basis is entirely speculative. Absent some credible showing that Plaintiff will suffer further liability because of the delay caused by Defendant's breach of the contract, no punitive damages will be awarded.

While Plaintiff has not adequately supported its claim for the requested amounts of attorney's fees and punitive damages, the Court does not find that a hearing is necessary under Rule 55(b)(2)(B) to determine the amount of damages due, as the requested amounts will likely be computable from proper documentary evidence. See 10 James Wm. Moore, et al., Moore's Federal Practice § 55.32[2][c] (Matthew Bender ed. 2010) ("[T]he 'hearing' may be one in which the court asks the parties to submit affidavits and other materials from which the court can decide the issue."). As such, Plaintiff will be required to submit further evidence in support of its claimed punitive damages. Should Plaintiff be unable to adequately support its claims with further documentary submissions, an evidentiary hearing may be held on the matter.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs' request for default judgment but will instruct the Clerk of Court to defer entering judgment pending the Court's damages determinations. Plaintiff will be directed to submit further evidence to support its requests for attorney's fees and punitive damages. An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

---

attorney's fees.

| | |
|---|---|
| **JONESTOWN BANK AND TRUST CO.,** : | |
|     Plaintiff : | |
| : | Civil Action No. 1:12-cv-01666 |
| **v.** : | |
| : | (Chief Judge Kane) |
| **AUTOMATED TELLER MACHINE,** : | |
| **SERVICES, INC.,** : | |
|     Defendant : | |

## ORDER

**AND NOW**, on this 4th day of December 2012, upon consideration of Plaintiff Jonestown Bank and Trust Company's motion for default judgment (Doc. No. 6), and for the reasons set forth in the Court's memorandum opinion filed herewith, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's motion for default judgment (Doc. No. 6) is **GRANTED**;

2. The Clerk of Court is directed to defer entering judgment on Plaintiff's claims pending the Court's computation of the amount of reasonable attorney's fees and the Court's determination as to whether punitive damages are warranted; and

3. Plaintiff **SHALL SUBMIT** further evidence supporting its request for attorney's fees and punitive damages, in accordance with the limitations discussed in the Court's memorandum, within fifteen days of the date of this order.

                                                                        s/ Yvette Kane
                                                                        Yvette Kane, Chief Judge
                                                                        United States District Court
                                                                        Middle District of Pennsylvania